We have argument next in Case 13-517, Warger v. Shauers. Mr. Shanmugam. Thank you, Mr. Chief Justice, and may it please the Court. In McDonough v. Greenwood, this Court held that a party is entitled to a new trial where it can show that a juror was materially dishonest at voir dire, regardless of whether the juror's dishonesty actually infected the verdict. A McDonough claim is thus an inquiry into the composition of the jury. It is not an inquiry into the validity of the verdict. And for that reason, Federal Rule of Evidence 606b unambiguously permits the introduction of testimony about statements made during deliberations in support of a McDonough claim. Kennedy, but wasn't that a case in which a third party came and gave the information? Shanmugam That is correct. And so we are certainly not arguing that McDonough itself resolved the question of the scope of Rule 606b. But we do think that the nature of the McDonough inquiry is really critical here in determining whether Rule 606b applies. And in particular, we think that the critical fact is that McDonough in no way requires an inquiry into what actually took place in the jury room. It is, as we say in the briefs, a type of structural error, and by that I mean that it has no prejudice component. And in that regard, it is critically different from other types of claims, such as a claim of outright jury bias, where prejudice is required. And it's really for that reason that we think Rule 606b unambiguously permits evidence of this variety to be admitted. Ginsburg I thought that the whole rationale behind this is we don't want to invade the jury province with information about what went on in the jury room. And that's a pretty old rule. And some people may think it makes no sense. You can have an eavesdropper, and that's okay, but you can't have a juror itself. So this, what's involved here is a juror reporting what she heard during the deliberation and it seems to me that's exactly the kind of thing that is not permitted. Justice Ginsburg, we're certainly talking about statements made during deliberations, and we are not disputing that this is the type of evidence that is subject to the rule. Our argument concerns the first requirement of Rule 606b, which goes to the type of inquiry during which evidence that is otherwise covered by the rule would be admissible. And I do think that Rule 606b embodies a balance. It isn't simply about the countervailing policy concerns, which Respondent and the government understandably emphasize, of finality and jury secrecy. There is, of course, a countervailing concern here about fairness. That is, after all, the principal concern on which the rule of McDonough itself was based.  Ginsburg's point about the jury reporting on the voir dire. So the judge instructs the jury, can you follow my instructions? Oh, yes, I can follow my instructions. In the jury room, that juror says, oh, come on, let's just average it all up and go home. Didn't follow instructions, I think, on your theory. That could come in because it goes to dishonesty at the voir dire stage. So two responses to that, Justice Ginsburg. First of all, as we point out in our reply brief, our rule has been the rule, both on the Federal level and on the State level, in numerous jurisdictions. And we would respectfully submit that there is really no evidence of the floodgates   Ginsburg's point is, if the floodgates are absolutely there, why not? Well, that goes to my second response, which is that I think that it is going to be very difficult in the hypothetical you posit for a party to make out a successful McDonough claim. And that is simply because the requirements of McDonough are, in fact, quite stringent. And in particular, the first requirement of McDonough is that the moving party must show that the response was intentionally dishonest. And by that, I think that the Court really meant intentionally dishonest at the time of voir dire. So to take the hypothetical that the government uses in its brief of the McDonough claim, ultimately would prevail. The question is whether the testimony from jurors about what went on in the jury room is going to be solicited in an effort to prove a McDonough claim. And I guess your answer to what the implicit in what you're saying is that it would be permissible to receive that testimony in that situation. Well, Justice Alito, I think there are two separate issues here. The first is the concern about undue solicitation. And as we have explained, there are a variety of rules that I think impose appropriate limits on a lawyer's ability to go out and get evidence of this variety. And of course, lawyers always have an incentive to talk to jurors if they are able to do so. Our point is simply that to the extent that there is a concern raised about harassment of jurors that is already dealt with, and appropriately so, by governing rules. Now, I think Justice Ginsburg's question was the same. I'm sorry, I didn't follow that. You said lawyers always have an interest in talking to jurors. What's to prevent them from doing so if the payoff could be as significant as you're looking for? Well, I think at a minimum, Mr. Chief Justice, lawyers certainly would have that incentive even if we were to lose this case, because in talking to jurors, that conversation could very well lead to evidence that unquestionably would be admissible. Because after all, a party can always make a McDonough claim based on extrinsic evidence. And so, for instance, if in fact a juror had posted something on Facebook that indicated that the juror had been dishonest at voir dire, there's really no debate that that would be admissible. But to go to Justice Ginsburg's question, really sort of the second part of this, I think it's important to remember that the mere fact that the evidence is admissible under Rule 606b is not the end of the inquiry. The evidence still has to be probative and probative with regard to the requirements of McDonough. And I think perhaps the best example that I would give is actually an example that the government uses in its brief, the example of the situation where the jurors go back into the jury room and they flip a coin in order to resolve the case. Now, the government suggests that perhaps a party could seek to use that as evidence that the jurors were in fact dishonest when they said that they could be fair and impartial at the time of voir dire. But if so, that is pretty weak evidence of that for the simple reason that the requisite showing under McDonough is that the juror intended to be dishonest at the time of voir dire. And in the coin flip hypothetical, it might very well have been that the jurors flipped a coin because they were frustrated with their inability to reach a decision. They may have wanted to go watch the football game. There are any number of reasons, but that is not really very strong evidence of intentional dishonesty at the time of voir dire. I think this case ---- Ginsburg-Miller What is the strong evidence of intentional dishonesty in this case? The woman says, I can judge this case fairly, I can award damages. And one of the other things that the judge instructs the jury, you can take account of your own life experience. What is so blatant about that? How do we infer that she intended to be dishonest at the time of the voir dire? Shanmugam Well, again, I think that this really goes to the requirements of McDonough as opposed to the interpretation of Rule 606b. But I think that there is a meaningful difference between a juror simply bringing personal experiences to bear, on the one hand, and a juror doing so in a way that indicates that the juror was, as was true in this case, simply unwilling to award damages to Petitioner in a case of this variety. And I think it's important to underscore the extent that the facts of this case shed some light on the legal question, that this is not simply a case about a question involving fairness and impartiality. There were also questions asked about whether the jurors would be willing to award damages of various types in a case of this variety. And to point to the evidence of dishonesty in the record at pages 40A to 41A of the appendix to the petition, Juror Titus said that Juror Whipple said in the discussions that if her daughter had been sued for the accident for which she was responsible, it would have ruined her life. In our view, that is evidence that the juror was unwilling to follow the instructions and to apply the law to the facts. And we believe that it also strongly supports the inference that the juror was dishonest at the time of voir dire when she answered. Roberts' Well, it's pretty ambiguous. She said if she had been sued, she would have to pay a lot of damages, right? Well, this guy has been sued. I mean, I don't know that you can just take that and say that means she's not going to award a judgment in favor of the plaintiff. Well, she said it would have ruined her life if she had been sued. Right. And to be fair, this is obviously not smoking-gun evidence. This is not a situation where the juror comes into the jury room and says, look, I really lied when I answered those questions at voir dire. It is inferential evidence. And it will be a matter for Judge Viken on remand, if this Court agrees with our interpretation, to determine first of all whether this affidavit is in fact probative evidence of intentional dishonesty. Roberts' Well, I guess the reason I ask is precisely for that reason. In other words, it's a fairly broad inquiry. The circumstances in which you would allow an inquiry are fairly broad. It's not simply when there's a smoking gun, but a very debatable point about, well, she didn't want to award damages because if her daughter had been sued, it would ruin her life, as opposed to, well, she realized there would be a lot of damages here because the guy was sued. And again, that really goes to the application of the McDonough standard. And we've now had 30 years of experience with the McDonough standard. This is not a recent decision of this Court. But McDonough did not have to do that. Scalia, my problem is not the difficulty of proving that it did demonstrate dishonesty during the voir dire. My problem is what you also have to establish, namely, that this does not constitute an inquiry into the validity of a verdict or indictment. Well, thank you, Justice Scalia, because this is obviously a case about the interpretation of that language. I think it's critical to realize that that language does not simply refer to any challenge to the verdict. It refers to inquiries into the validity of the verdict. And in our view, that language underlies the rest of the law. Sotomayor, except why would you have an inquiry into the validity of the verdict absent juror misconduct? You're not going to use that statement in any other part of your case. But the critical point, Justice Sotomayor, is that that language focuses on the inquiry, and it focuses on the substantive inquiry mandated by the claim at issue. And again, as I indicated at the outset, a claim of juror dishonesty during voir dire does not require any examination of the verdict itself. It does not depend in any way on what took place in the jury room. And it's really for that reason that we think that a McDonough claim is qualitatively different from a claim. Kagan.               Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. And another reason why a verdict can be invalid might have to do with the composition of the jury itself. And why we should read that language to include the first but not the second, I guess I'm just not getting as a matter of language. Sure. Well, I do think that you have to give meaning to every word in this provision. And I really do think that this provision is different from a provision that just refers to challenges to the verdict. And it certainly is true that in this case, as in many others, we are seeking as the remedy on our McDonough claim a new trial. And a component of that, once a verdict has been reached, is obviously that the verdict should be set aside. In other words, I'm not disputing the proposition that our purpose here is to obtain a new trial and, of course, therefore to set aside the verdict that has already been reached. My point is simply that a McDonough claim in no way turns on the manner in which the jury has reached the verdict. And no, so maybe we're just going back and forth here. But an inquiry into the validity of a verdict means asking the question, is the verdict valid? And the question, is the verdict valid, can have answers that refer either to the deliberative process itself or to the composition of the jury. But that is not the question that a McDonough claim asks. And I think the best evidence of that is that I think it's really undisputed that a McDonough claim can be brought even before a verdict has been reached. Kennedy, I haven't quite counted, but you keep saying this is a McDonough claim. If you read the McDonough case, Chief Justice Rehnquist does not cite Rule 606. He does not cite – I think I'm correct about that. You're absolutely correct. And so you want to tell us, don't look at Rule 606, just look at McDonough. That's what you're telling us. I am eager for you to look at the language of Rule 606, because I think it supports our position. The only reason that we're talking about McDonough at all is because Rule 606 requires you to look at the type of inquiry that the claim at issue mandates. And I think in many ways, this nature of a McDonough claim is a very different nature. Kennedy, but it also requires you to look at who is producing the evidence. Well, here the juror is producing the evidence, and McDonough was the third person. It's different. Well, the rest of Rule 606b is, of course, all about that, because it is all about the type of evidence that is subject to exclusion. And again, there's no debate that that portion of the rule sweeps quite broadly and would otherwise include the evidence at issue here. Our point is simply that a McDonough claim is a type of structural error, and I think that that points up the – But you're taking a case that had nothing to do with a juror testifying about what the deliberations in the jury room. I think you're using the case for much more than it's worth, much more than the opinion writer put into it. It just didn't present the question of what about a juror testifying about the deliberations in the jury room. Well, Justice Ginsburg, I do think that the nature of a McDonough claim points up one of the oddities of Respondent's position, which is that there's really no dispute that if a McDonough claim is brought before a verdict has been reached, that evidence – even evidence from the jury room would be admissible. And so, for instance, if a juror came forward before the jury actually completed its discussions and reached a verdict, I think there's no dispute here, at least I don't see any dispute in the briefs, that that evidence would be admissible. And so, too, of course, in Clark, this Court held that evidence of this variety would be admissible in a contempt proceeding after the verdict has been reached. And so it troubles me about your argument. I suspect, maybe I'm wrong and you tell me if I am, that in a case where there's a lot at stake, a really good lawyer loses the case and there was a lot on the line. And let's suppose this lawyer gets a transcript of what was said in the jury room. Do you think it is going to be very hard for the lawyer to find something that some of the jurors have already used to make out a somewhat plausible claim that the juror was dishonest during Vardir? The juror promises during Vardir to be fair, and it appears from this transcript the lawyer was for the plaintiff or for the defendant from the first minute of deliberations. Or the juror says, I will follow the jury instructions, and then at some point the juror is making an argument that's inconsistent with the jury instructions. Do you see the problem? I see the problem. I would just respectfully submit, Justice Alito, that it hasn't proven to be a problem in practice. And as we note in our reply brief, this has been the rule in the Ninth Circuit, it's been the rule in the nation's largest State jurisdiction, California, for decades. And yet in those jurisdictions, there is less than one decision per year that we've been able to find involving a McDonough claim based on this type of evidence. And of course, as we — I'm sorry. I was just going to say one last thing, Justice Alito, which is that, of course, as we also point out, our rule was, if anything, the prevailing rule at common law, even before the enactment of Rule 606b. And there's no evidence that there was a Floodgates problem at common law either. It is — under your reading of 606b, is there anything that is an inquiry into the validity of a verdict other than a motion to set aside the verdict? Well, I think that there might be certain types of claims of which prejudice is a component. And certainly, if you brought a motion that was based on pure juror bias of the type that was at issue in cases such as Remmer v. United States and Smith v. Phillips. But what would that — that motion would be presumably a motion to set aside the verdict? I assume it would be framed that way rather than as a motion for a new trial. The reason I ask is because they don't say that. It seems to me a broader definition of any inquiry into the validity of a verdict. If they wanted to say, you know, if they only meant a motion to set aside a verdict, you'd think they would have said that. Yeah. I mean, I — off the top of my head, I can't think of another type of motion for new trial that would be treated differently. But certainly, wherever the claim depends in any way on what took place in the jury room, the evidence would, of course, still be subject to the rule. And again, that sweeps in claims of juror bias. It sweeps in all of the types of claims about which the framers of Rule 606b were clearly concerned, claims involving the manner in which the jury reached the verdict, claims involving compromise verdicts, quotient verdicts, and the like. And I think, if anything, to the extent that the drafting history of Rule 606b is relevant, it tells us two things. First, there's no indication that the framers of the rule intended to disturb what was the prevailing practice at common law, particularly after this Court's decision in Clark. There's simply nothing in the history of the rule that suggests that. And if anything, I think that the history of the rule suggests that the central focus in framing the rule was on excluding evidence concerning the manner in which the jury reached its verdict and not evidence that was used to demonstrate that the jury was improperly constituted. Now, again, because the rule focuses on the inquiry mandated by the claim at issue, we think that ours is the better textual interpretation. But at a minimum, if the Court thinks that the rule is somehow by its terms ambiguous, I would simply make two points. First, we do think that the canon of constitutional avoidance would apply in this context. At least one court of appeals has held that there would be a constitutional problem with excluding evidence in cases involving racial bias. We believe that there would be a serious constitutional concern more generally because the right to adequate voir dire is, as this Court has said, part of the right to trial by an impartial jury. But even if the Court doesn't think that this is a matter for constitutional avoidance, we certainly think that there is a constitutionally based interest here, the interest in protecting a litigant's right to a fair trial. And we believe that that interest does outweigh the countervailing interest in finality and jury secrecy. Now, in part, a party has a right to a competent jury, doesn't it? Yes, that is true. A constitutional right to that, and yet you couldn't inquire, the Court has held that there can't be an inquiry into whether the jurors were intoxicated. Well, that is true. But I think that the Court reached that conclusion based entirely on the outside influence exception, and I think part of the reason why that is true is that I think that the Court viewed the inquiry in that case in Tanner as requiring a showing of prejudice. In other words, I think that the Court was operating on the premise that the underlying claim there would require a showing that the drunkenness actually redounded to the moving party's prejudice. My point is simply that when we're looking at the policy balancing that is required here, the better point of reference is this Court's decision in Clark, where the Court suggested, albeit in the context of contempt proceedings, that concerns about fairness outweighed the litany of concerns about jury secrecy and harassment. Now, to be sure there was no jury verdict impugned in the contempt case. That is correct, although the Court did indicate that its rule was consistent with the common law no impeachment rule. But I think with regard to the policy considerations, it certainly is true that this case is different because it does possess a final verdict. But I think with regard to finality, I would point to the experience in the jurisdictions that have adopted our rule, which confirms that if evidence of this variety is admissible, verdicts are only rarely set aside, and that is because McDonough itself sets an appropriate and appropriately high standard. And, of course, the only question before the Court in this case concerns the admissibility of this evidence. It would be open to the district court on remand to decide what to do with this evidence if it is admitted. Our submission is simply that Rule 606b by its terms permits the admission of this evidence because it is not being admitted in an inquiry into the validity of the verdict. And if I can reserve the balance of my time for rebuttal. Roberts Thank you, counsel. Ms. Birnbaum. Birnbaum Thank you, Your Honor. May it please the Court, Mr. Chief Justice. What the Petitioner would do here is change the rules of 606 and how it would apply. 606 is clear. This Court has said its language is clear. What Petitioner does not emphasize is that what they did below was to make a motion for a new trial and to invalidate the verdict. The fact that the ground was dishonesty of the juror doesn't change anything from the Tanner case, where the grounds for the new trial was that the jurors were drinking during the trial and during their liberations. McDonough doesn't change the nature of 606b. All McDonough says, I think as you have pointed out, is that if there is an inquiry, that inquiry would have to be such, but it does not tell you what is admissible. And Rule 606 tells us what's admissible. And this, the Petitioner has conceded is not admissible. It is jury testimony of what happened during deliberations. So that's clear. So what are we fighting about? We're fighting about what did Congress mean by, during an inquiry into the validity of the verdict. This is an inquiry into the validity of the verdict. You can't just separate the grounds. What they want here is a new trial and the verdict invalidated. And so it falls exactly into 606b, and the legislative history absolutely supports that. Congress, this Court, made decisions and balanced the fairness on one hand of allowing in this testimony, and the problems about the sanctity of a jury trial, and the entire structure of our judicial system. And to adopt Petitioner's analysis would put this all on its head. What would we have? I think we all know what we would have here. Every lawyer, good ones or bad ones, Your Honor, would try to ask generalized questions, can you be fair, and then wait and see what happens. Roberts Your friend says that hasn't been the experience in a large portion of the country. Well, that's not true, because first of all, my friend doesn't tell you that there are only five States that allow in this kind of evidence at all. Is California one of them? California is one of them. Well. But even in California, Your Honor, there are different requirements. These cases go on – I'll just give you a perfect example. He cites a bunch of cases in the Ninth Circuit that he says, these are the cases that apply the rule. Well, they don't. Even the cases that they rely on from the Ninth Circuit, Henley and Hard, it is dicta in those cases that you can admit testimony of a juror on what happened during deliberations if you're trying to determine whether there's dishonesty. In those cases themselves, that was not the holding of the case. There was dicta that says you should be able to do that, but the holdings of the case went off on extraneous prejudicial influences or extraneous prejudicial information. And there are others. Roberts Your argument is this is going to be something lawyers are going to ask about in every case. And it seems to me, if you're dealing with California, we would have a lot more evidence of that since they operate under the rule that your friend is arguing for. Well, they do and they don't, Your Honor. You can introduce certain things in California, but you can't introduce the mental processes in California. But the answer to that is we don't know what's happening in California. There is no – no experience that anybody has about what's going on in California or how the courts are applying it. We didn't have an opportunity to respond to all those California cases because they were only cited in the reply. But we've gone through all those cases, and in many of those cases, this kind of testimony was not led into evidence. So if – we don't know what the experience was in California, but we do know what Congress said. And we do know what Congress had before them and what Congress wanted. Congress did the balancing here. Congress balanced the fairness of jurors – the fairness of a jury trial against all of the issues and policies of keeping the jury in a black box because it's good for the system. Without it, we couldn't function. Sotomayor, what sense does it make to do what we did in Clark, which is to say you can invade the jury deliberations in a contempt proceeding, so the jury is not sacrosanct. The Court has already said that a proceeding for contempt doesn't involve the verdict and it's a criminal action, and not permit the use of that evidence in the civil trial. The same thing will have happened in both situations. The jury's sanctity has been invaded. But, Your Honor, the reason that we allow it in a contempt proceeding is it doesn't affect the validity of the verdict. It doesn't go to what happened with regard to the verdict. And the contempt proceedings are few and far between. Jurors aren't going to be harassed on a regular basis. And if you have a criminal contempt proceeding, you have a prosecutor who is going to make a determination and stand between the jurors and the contempt proceeding before they'll bring a contempt proceeding. We know how few these are. Here we're talking about in every criminal case, in every important civil case. Well, not such an important civil case. This is a run-of-the-mill case we have here, a simple accident case. Ginsburg. Is there no way to police the honesty of jurors' answers on voir dire? And this is an obvious way, if it were permissible, to police the honesty. But is there any other way? Your Honor, in this case especially, and I'm not sure I'm answering your question, we could have had a different kind of voir dire. There was no specific question here. Has any member of your family or you been involved in an automobile accident? That was never asked of the juror. And beneath a juror lied about that? Well, they could have, or the juror could have said yes, assuming that there was an, assuming that the juror of four-person daughter was involved in an auto accident, she could have said that, and they could have inquired. But they don't do that. And look at the gamesmanship that can be played with lawyers. They don't ask specific questions, which they should, to get to the right answers and to get to the right jurors in voir dire, and then they sit back and wait and game the system and see how the verdict comes back, talk to the jurors, and then they have a grounds to set aside a verdict. This is not what Congress wanted. That's not what the Supreme Court said should happen in Tanner. And the Petitioner here says, under the common law, this was the rule. You could admit this kind of testimony. That's utterly untrue. In Tanner, this Court said, under the common law, it is clear that you could not admit this evidence. That was the majority rule. There was a minority rule. And you know what happened? When Congress looked at this issue, they adopted the majority rule. They said the jury room is a black box except for certain extraneous influences, extraneous prejudicial information. This is not it. It doesn't fall within that category. And why not? Because, Your Honor, this is generalized information. When we talk about extraneous prejudicial information, I think the case law is absolutely clear. It has to be about the case, about information that you put into the jury room about the defendant or about the incident, the accident. If you went and looked at the scene of the accident and then came back and talked to the jurors about it, that would be extraneous. But this kind of generalized information, assuming it's true, my daughter was in an auto accident, the Petitioner talks about her unwillingness to determine certain damages. This case never came to damages. What actually happened in this case is the jury met for two hours. This was a question of contributory fault. And what happened was the jurors came, asked the court a question. If we apply, if we apply contributory negligence and we find that there's slight contributory negligence, must we find for the defendant? Alito, what would happen in the really egregious case? So the jurors are asked during voir dire, can you be fair to everybody, to parties regardless of race? Oh, yes, yes, we can. And then after there's a verdict, a juror comes forward and says, during the jury deliberation, the jurors were making all kinds of biased statements and they were clearly prejudiced. What would happen there? I think, Your Honor, under 606b, there would be no difference. You still could not introduce that jury testimony. Now, maybe that's wrong and maybe Congress should change 606b, but that's a job for the jurors in connection with the judicial conference and with all of the people that would ask Congress and come in and testify, and Congress can make that decision if they want to have an exception. But Congress knew about that when it passed 606b, and it didn't make an exception for racial bias. And if Congress wants to do it, it could do it. But this Court can't do it or shouldn't do it because it's not part of what Congress intended. Congress knew quite well there was a lot of discussion here. And the Petitioner is correct. Most of the discussion did not go to the words, during an inquiry into the validity of the verdict. Sotomayor, would you think that with respect to the kind of case that Justice Alito has in mind, a case of racial bias, and let's put it in a criminal context, that maybe it's not up to Congress, that at some point one begins to run into constitutional issues? Well, I think at least in this Court, in Tanner, looked at those constitutional issues, not in the racial bias context, but in the context of having a drunk juror deciding a particular case. Why is that the case? I mean, would we make an exception to normal hearsay rules where racial bias is a question? You would not, Your Honor. I don't think so. But the further answer to that is this Court has already said there are other safeguards that are in place that we feel will be sufficient in order to safeguard the Sixth Amendment rights in that particular instance or the Seventh Amendment rights of a fair trial. This Court has said we can't give litigants a perfect trial. We know that there are going to be some cases where a juror acts improperly, acts with bias, but we can't change the system and open it up to jurors being harassed, to jurors being asked what happened in the jury room, because we will then take a private process and make it a public inquiry. And Congress didn't want that. Is Court in Tanner's favor? Kagan. Kagan. I suppose one idea, because we have relied a lot on the efficacy of other safeguards and this isn't this case, so you can just say it's not this case, but that those safeguards might not be so effective in certain contexts, and particularly with respect to ferreting out racial bias, or religious or ethnic or something like that. I think, Your Honor, again, I'll come back to, really, this is an issue for Congress. The rules of evidence are now adopted, even if the Court feels there is unfairness in them, they have to interpret them, and they have to interpret them as Congress wrote them. Certainly Congress knew about racial bias and ethnic bias when it was writing these rules and passing these rules in 1972. There is not. Roberts' Is there any alternative remedy available that doesn't go to the validity of the verdict? You know, the Petitioners allegedly were injured, to a great extent, by the jurors' you could call it fraud, I guess. Can they bring a direct action against her? Kagan No, Your Honor, I don't think so. I think the only thing is if a juror lies, there's the contempt proceeding. That can be brought. It's part of what we have to live with in the system, because we can't provide perfect trials for people. We can only provide as fair as they can. And in this particular case, the broad questions that were asked, the fact that there was no, and the Petitioner says there's an unwillingness on this juror to find damages. There's nothing in the affidavit that was presented that even hints at that. It says she may have influenced other jurors. By the way, do we bring in the other jurors? This is what this would open up. Let's say we go back. The juror that put in the affidavit goes and testifies. The forelady goes and testifies. They have diametrically different views of what happened in the jury room. Do we then bring in all the rest of the jurors? And the fact that McDonough may in certain circumstances allow jurors to, and by the way, McDonough does not allow jurors to testify, as you said, there was no juror testimony there. And the fact is that the rule is clear on its face. This falls exactly within 606B and the legislative history and the policy behind it, and we should not be extending it to this kind of situation. Thank you. Roberts. Thank you, counsel. Ms. Harrington. Thank you, Mr. Chief Justice, and may it please the Court. Any hearing on a motion for a new trial is an inquiry into the validity of a verdict. That's true when a plaintiff, when a litigant brings a McDonough claim, because what the litigant is arguing is that the verdict that was issued in his case is invalid because the tribunal that issued the verdict was improperly constituted. It would be the same if the litigant were arguing that the judge that issued a decision in the case should have recused herself from the case based on some sort of conflict. It would be the same if the litigant were arguing that the jury had five members or 25 members. In each of those examples, how the argument goes is that the tribunal was improperly constituted, and so the verdict that was issued was invalid because an improperly constituted tribunal cannot issue a valid verdict. Now, Mr. Shanmugam says that we should limit the phrase inquiry into the validity of a verdict to cases where what you're inquiring into is what happened in a jury room. But just as a matter of normal English usage, I think it's not hard to imagine an inquiry into the validity of a verdict that would not look into what happened in a jury room. For example, if a criminal defendant who's convicted files a motion for a new trial based on sufficiency of the evidence, I think anyone would think that the hearing on that motion is an inquiry into the validity of a verdict, because a verdict that's based on insufficient evidence is not valid. You wouldn't look at what happened in the jury room, and so you may have no occasion to apply Rule 606B in that kind of inquiry, but it would certainly be an inquiry into the validity of a verdict. When someone brings a McDonough claim, it's not just a freestanding thing. They bring it as part of a motion for a new trial. That's part of an inquiry into the validity of a verdict. Now, there's been some questions about what's happened in California where this type of evidence is admitted. What Mr. Shanmugam says is that there have not been, there hasn't been an appreciable increase in the number of successful McDonough claims in California. Of course, the problem that Rule 606B targets is not too many successful McDonough claims. It's overly intrusive inquiries into what's happened in, during jury deliberations, and so that's really not responsive. But it is true that in California and in about five other States, this type of evidence is admitted because those States apply the Iowa version of the common law rule. And under the Iowa rule, anything that jurors said during deliberations you could admit testimony about, because it wasn't something that was internal to a juror's mind, it was something that could be corroborated or rebutted by other jurors. And so this type of evidence would be admissible in those five or six States because they apply a different type of, a different version of the no impeachment rule. Of course, Congress was aware that that was an option available to it when it adopted Rule 606B, and that was the version of the rule that the House of Representatives wanted. There's lots of back and forth that's covered in the briefs. It's not true that that was the prevailing rule of common law. The Wigmore Treatise in 1961 identifies 12 out of 50 States that apply the Iowa version. The other 38 States applied the majority version, which was more restrictive or, you know, excluded more evidence. That was plainly the version of the rule that was adopted by the Senate. And so I think that really points up the fact that in this kind of area where you have these competing important interests, it's really up to the legislature to decide where it's going to draw the line. Here, the line is pretty clear. Congress couldn't have, it would have been hard for them to write the rule any more broadly than they wrote it. It applies in any — during any inquiry into the validity of a verdict. It covers anything that happens in the jury room unless one of the specific exceptions applies. The exception for extraneous information does not apply here, it's our view, because that exception has been construed only to apply to evidence that's specifically related to the case. Congress understood that. That's reflected in the legislative history. It's reflected in the common law. And if the Court doesn't have any questions, I think I've hit the highlights. Roberts. Thank you, counsel. Mr. Chambingham, you have seven minutes remaining. Thank you, Mr. Chief Justice. I think there are just four very quick points that I'd like to make. First of all, with regard to the text of the rule and this question of whether this constitutes an inquiry into the validity of the verdict, I would just say one thing in response to what Ms. Harrington has just said. If, for instance, a party files a motion for a new trial based on the insufficiency of the evidence, that is by definition a claim that can be brought only at the close of the evidence in the case. A McDonough claim is critically different because that claim ripens at the point at which the allegedly dishonest juror is actually impaneled. And so a McDonough claim could be brought before the verdict has been reached or after the verdict has been reached. And to the extent that the argument here is that the jury is a black box and that one shouldn't look into the jury's deliberations, I would note, again, that evidence of this variety would plainly be admissible either before a verdict has been reached or in a contempt proceeding after a verdict has been reached. Scalia, of course, you'd have no incentive to do that until you lose, right? So you would rather sit around and see if the verdict goes against you, at which point you would make the claim. Well, that is certainly true, but again the claim before the verdict comes out, is anybody going to do that? Well, there are cases where the evidence comes to light typically when a juror actually comes to the judge and then the judge takes some action based on the statements that have been reported. But I think it's important to realize that a McDonough claim doesn't in any way depend on the outcome. One could be the prevailing party and seek relief on a McDonough claim, although one would obviously have no incentive to do so. That simply points up the fact that a McDonough claim, again, in no way depends on what actually took place in the jury room in terms of the manner in which the jury reached its verdict. Second, I want to address this question of the state of the law, which I think is critically important here, because it really goes. Ginsburg. Can you explain the manner in which the jury reached its verdict? I thought that the testimony of Titus was she made this statement about her daughter, and she persuaded all the other jurors to go along with her. That's the manner in which the jury reached its verdict. It didn't follow the law. It followed what this woman was alleged to have said. Justice Ginsburg, the Titus affidavit does contain those allegations, but those allegations are utterly irrelevant to the resolution of a McDonough claim. In other words, it doesn't matter for purposes of the McDonough claim whether the other jurors were influenced or whether the other jurors said, we don't care about your daughter's experience. That doesn't affect our decision-making in the slightest. And that is because a McDonough claim is designed to identify juror dishonesty at voir dire without regard to the impact on the jury's deliberations. Now, second, I want to say something about the current state of the law. Presumably that's because we assume impact, isn't it? So the impact is sort of built into the rule. Well, it's built into the rule only in the sense that it has to be material dishonesty. And so if a juror, you know, dishonestly answered a question about his or her name at voir dire, a court would say that that's immaterial. My point is simply that McDonough does not require any analysis of actual prejudice as the proceedings actually played out, and that, in our view, is the critical distinction. Now, let me say something about the current state of the law, because I think there's a certain amount of uncertainty based on this argument about that, and I want to clarify that. It has unambiguously been the rule in the Ninth Circuit since its decision in Hard that evidence of this variety is admissible. And I respectfully submit that my friend, Ms. Birnbaum, simply misreads the Hard case when she argues that that is dicta, and the best evidence of that is how that rule has been applied in the Ninth Circuit, because I think it has been treated as the law now for some three decades. And it is clearly the law in California in the wake of the California Supreme Court's decision in People v. Castaldia. Our point is that there has been less than one decision that we've been able to find, whether reported or unreported, in each of those jurisdictions per year since those rules were adopted. And when I say – when I'm talking about decisions, I'm not just talking about decisions in which McDonough claims were successful. I'm talking about decisions in which evidence of this variety has even been sought to be admitted. And so there is really no evidence that this is a problem in those jurisdictions, and we have been unable to find any suggestion in the secondary literature that this is a problem either. And to the extent that Ms. Birnbaum complains, we only cited those cases in our reply brief, I would note that it's really Respondent's burden here to identify evidence that this is, in fact, proven to be a problem. Now, Respondent and the government say that there are five States in which evidence of this variety is admissible. I think that actually understates the current state of the law. We've identified approximately 14 States where the evidence is admissible. But this points out another point of confusion here. Respondent and the government talk about this distinction between the Iowa rule and the Federal rule. And the Iowa rule applies to jurisdictions where only evidence of the jurors' thought processes is subject to exclusion. The Federal rule, like Rule 606b, covers a broader type of evidence. But even in jurisdictions that apply the Federal rule, courts have held that evidence of this variety is admissible. And that's simply because we're talking about two separate questions. On the one hand, the type of evidence that is subject to exclusion, and on the other hand, the type of inquiry during which such evidence is excluded. So again, we would respectfully submit that there is no evidence that this is anything other than a speculative concern that our interpretation would lead to these difficulties with juror harassment and undermining the finality of verdicts. Let me say just a word about the issue of racial bias. I think this is critically different from a case involving, say, the application of the hearsay rule, because this really goes to the fundamental question of whether the fact-finder itself was racially biased. And the researchers' view is that the fact-finder itself was racially biased. Scalia, is that also an exception? Well, I think the fact-finder itself was racially biased. What about bias against handicapped people? I mean, all of those things are difficult to find. Well, it raises constitutional concerns beyond the constitutional concerns that we think are applicable in every case of this variety, because after all, regardless of the type of bias, what we're talking about here is the right to trial by an impartial jury, a right that is founded both on the specific constitutional rights involving jury trials and the fundamental right to due process. And our point is simply that to the extent that the Court thinks the rule is ambiguous, those concerns should come into play and support our interpretation. I would just say one last thing before the end of the argument, and that is simply that Ms. Birnbaum referred to this as a run-of-the-mill case. And my client, Petitioner Greg Warger, I think would strongly object to that. He, after all, lost his leg in this accident. And so while this case doesn't involve multiple millions of dollars or some fundamental constitutional right, it is vitally important to him. And while Ms. Birnbaum refers to the concern about gaming the system, it's important to remember that this was a case in which the juror in question, Stacey Titus, actually came to the lawyer. And if Mr. Warger is unable to seek the admission of this evidence, he will have no ability to obtain relief on his underlying McDonough claim. We would respectfully submit that the judgment of the court of appeals should be reversed. Roberts. Thank you, counsel. The case is submitted.